O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KAVEH VAHEDI, | ) | Case Nos. 2:16-cv-03827-DDP |
| | ) | 2:16-cv-03888-DDP |
| Petitioner, | ) | |
| | ) | (CR 12-00380-DDP) |
| v. | ) | (CR 12-01132-DDP) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **ORDER DENYING PETITION** |
| | ) | |
| Respondent. | ) | |

Presently before the court is Kaveh Vahedi ("Petitioner")'s Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. Having reviewed the parties' submissions, the court DENIES the Motion and adopts the following Order.

**I. BACKGROUND**

On April 14, 2012, Petitioner was indicted on twenty-four counts of bank fraud in violation of 18 U.S.C. § 1344, one count of making a false statement to a federally-insured bank in violation of 18 U.S.C. § 1014, and one count of aggravated identity theft in violation of U.S.C. § 1028A(a)(1). *See USA v. Vahedi* (*Vahedi I*), 2:12-cr-00380-DDP (Dkt. 1.) As set forth in the indictment, from May 2007 through approximately December 2008,

Vahedi perpetrated a fraudulent scheme whereby he posed as his father to obtain home equity loans and then transferred the funds into an account he personally owned. (*Id*. at 3.) Through this scheme, Vahedi obtained nearly $500,000 in fraudulent loan money and stole an additional $240,000 from his parents' savings account. (*Id*. at 4-6.)

On November 26, 2012, the government filed an additional two-count information against Vahedi, charging him with conspiracy in violation of 18 U.S.C. § 371 and wire fraud in violation of 18 U.S.C. § 1344. *See USA v. Vahedi* (*Vahedi II*), 2:12-cr-01132-DDP (Dkt. 1.) According to the Information, Vahedi owned and operated a company called KGV Investments. (*Id.* at 1.) From 1999 until approximately 2008, Vahedi's company submitted over 250 fraudulent loan applications based on falsified information. (*Id.* at 4.) Vahedi also defrauded at least thirty-one people out of more than $12 million by engaging in a Ponzi scheme disguised as legitimate commercial real estate projects. (*Id.* at 11.) Instead of investing this money on behalf of his clients, Vahedi used it for personal gain, including paying for various homes, luxury vehicles, and funding an international concert business. (*Id.*at 10.) Vahedi maintained his fraudulent enterprise by soliciting new investors and lying to existing ones. (*See id.* at 10-11.)

Petitioner pleaded guilty to count one of the indictment in *Vahedi I* and both counts of the information in *Vahedi II.* (*See Vahedi I*, Dkt. 22; *Vahedi II*, Dkt. 10.) The Presentence Investigation Report (PSR) prepared in Vahedi's case recommended a guidelines sentence ranges of 121 to 151 months. (*Vahedi I*, Dkt. 28.) The Government largely concurred with the PSR but recommended two downward adjustments based on Vahedi's cooperation and plea agreement, resulting in a recommended sentence of 97 months. (*See Vahedi I*, Dkt. 35.) Both the Government and the PSR relied on written statements from more than a dozen of Vahedi's thirty-three identified victims. Shortly before Vahedi's sentencing hearing, a group of more than twenty victims filed a "Sentencing Position Paper" describing Vahedi's impact on their lives and recommending a 240 month sentence. (*Vahedi I,* Dkt. 37.)

| 1  | On December 5, 2013, the Court held Vahedi's sentencing hearing. (*See Vahedi I*,

Dkt. 38.) In addition to hearing from the parties, the court heard from nine of Vahedi's victims who had appeared to address the court directly. Although Vahedi now asserts that some of the victims who submitted written statement or testified at the hearing may have had some knowledge of Vahedi's fraud, others did not. This includes a statement from Evelin G. who stated that she lost $263,033 in Vahedi's scheme. (*Vahedi I*, Dkt. 35 at 12.) As a result, Ms. G. explained that she lost her home, her marriage, and the ability to pay for her children's education. (*Id.*) The court also heard testimony from Mark Standring who described the close relation between his and Vahedi's family and the consequences of the subsequent betrayal. (*Vahedi I*, Dkt. 52 at 29-31.) Standring also described the difficulties he and his wife had in recovering the money they had invested with Vahedi because of how well Vahedi had hidden his assets. (*Id.*) Robert Ferguson testified regarding his emotional trauma, the stress caused to his marriage, and how he lost the money he had planned to use to pay for his daughters' education. (*Id.* at 31-34.) Dan P. submitted a statement describing his struggles to rebuild his career at age sixty-two after having lost $783,400 of his life savings due to petitioner's fraud. (*Vahedi I*, Dkt. 35 at 12.) Based on the victims' statements, the "cruelty of this particular offense," and Vahedi's lack of trustworthiness or remorse, the court sentenced Vahedi to 216 months on Count One of *Vahedi I*, 60 months on Count One of *Vahedi II*, and 216 months on Count Two of *Vahedi II*, to be served concurrently. (*Vahedi I*, Dkt. 35 at 79, Dkt. 39; *Vahedi II*, Dkt. 26.). The court also ordered restitution in the amount of $9,784,065.93.

Vahedi appealed his sentence on the grounds that the Court abused its discretion by denying his counsel's request to continue sentencing to allow more time to respond to the victim's Sentencing Position Paper, by failing to comply with Fed. R. Crim. P. 32, and by rendering a sentence that was procedurally and substantively unreasonable. The court of appeals affirmed the Court's decision. *See United States v. Vahedi*, 628 F. App'x 471, 473 (9th Cir. 2015).

1    Vahedi now moves to vacate his sentence under 28 U.S.C. § 2255 on the basis of
2 ineffective assistance of counsel at sentencing.

## II. LEGAL STANDARD

Section 2255 allows federal prisoners to file motions to vacate, set aside, or correct a sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. The petitioner in a Section 2255 motion bears the burden of establishing any claim asserted in the motion. To warrant relief because of constitutional error, the petitioner must show that the error was one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. S*ee Hill v. United States*, 368 U.S. 424, 428 (1962). When a petitioner alleges ineffective assistance of counsel, an evidentiary hearing is necessary only if, assuming the petitioner's factual allegations as true, the ineffective assistance of counsel claim could prevail. *See U.S. v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994).

## III. DISCUSSION

Under the Sixth Amendment, all criminal defendants enjoy the right to effective assistance of counsel. *Strickland*, 466 U.S. at 686-700 (1984). In *Strickland*, the Supreme Court held that in order to show ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance was deficient and fell below an objective standard of reasonableness and (2) the defendant was prejudiced as a result and deprived of a fair trial. *Id*. at 687. The *Strickland* test governs claims for ineffective assistance of counsel at sentencing proceedings. *Daire v. Lattimore*, 812 F.3d 766, 767 (9th Cir. 2016) (en banc).

To satisfy the deficient performance prong of *Strickland*, a petitioner must show that his counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 379 U.S. 759, 771. In considering this issue, there is a "strong presumption that counsel's conduct falls within a wide range of

acceptable professional assistance." *Strickland*, 466 U.S. at 689. To show prejudice at sentencing, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) ("Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because "any amount of [additional] jail time has Sixth Amendment significance." (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)).

### A. Deficient Performance Prong

Vahedi argues that his counsel rendered deficient performance by failing to adequately prepare for the sentencing hearing and by failing to cross-examine two of the victims who testified regarding Vahedi's fraud. According to Vahedi, defense counsel had access to information which provided a basis for arguing that five victims knew that the loan applications Vahedi prepared on their behalf contained fraudulent information. By pursuing this line of questioning, Vahedi contends that his attorney could have demonstrated that the victims knowingly submitted fraudulent applications and "counter[ed] their attempts to portray themselves as wholly innocent victims." (Pet. 17.)

Under *Strickland*, proving deficient performance by counsel requires a showing that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," under a standard of review which "must be highly deferential" to counsel. *Strickland*, 466 U.S. at 687. Applying this standard, the court finds that counsel's performance fell within the "wide range of acceptable professional assistance." *Id.* at 689. The gravamen of Vahedi's position is that his counsel should have argued that five of thirty-three victims had some knowledge that they were agreeing to allow Vahedi to file fraudulent loan application. As to at least four of these individuals, the primary basis for making this claim was the fact that the applications contained fraudulent information and the fact that the victims could not have reasonably expected to qualify for such loans. (Pet. 13-16.) As to the remaining witness, a former employee of Vahedi's, the basis of this

assertion was a note from an FBI interview that indicates the employee knew Vahedi had filed numerous other false applications. (Pet., Ex. K.) Vahedi also argues that these victims misrepresented the harm which they suffered as a result of the mortgage fraud. Even though several of these victims had stated or implied that they had lost their homes, Vahedi believes that his counsel should have noted that some of them were still listed on their home titles. (Pet. 13-16; Ex. N.)

      Failure to rebut the statements of these five victims does not fall outside the range of acceptable performance. As an initial matter, Vahedi's argument rests on the mistaken assumption that his counsel had a compelling basis for arguing that the victims had prior knowledge of the mortgage fraud. To the contrary, the victims have already admitted in previous civil proceedings that they signed the fraudulent applications but did not examine the details. (*See* Pet., Ex C. at 118-19; Ex. D at 150; *id.* at 157-59). In fact, one testified specifically about how Vahedi encouraged him to sign the loan application during a brief lunch break when he did not have time to review the details. (Pet., Ex. C at 118-19.) Another victim explained that she had merely signed a blank loan application, which Vahedi later filled in with inaccurate financial information. (*Id.* at 157-59.) Likewise, the specifics of who was listed on a particular property title might have had little relevance to whether the victims were able to actually stay in their homes. Vahedi's counsel may have reasonably concluded that these lines of questioning would not have been productive and instead may have needlessly antagonized the victims while highlighting the degree to which the victims trusted Vahedi's representations and the severity of the harm to which Vahedi risked exposing them.

      Even assuming counsel had a colorable basis for pursuing this line of questioning, counsel may have adopted a different approach on the assumption that it would be inappropriate to interrogate witnesses who had given "very emotional pleas," (Pet., Ex. A at 92-93,) and risk the court finding that Vahedi was not remorseful or was not taking responsibility for his actions. Likewise, counsel may have also concluded that it would be ineffective to pursue this strategy given that only two of the nine witnesses who gave

6

oral testimony at the sentencing hearing would be open to this line of attack. Given that Vahedi harmed many more victims, counsel may have reasonably determined that it would be more efficacious to focus on Vahedi's positive qualities than to argue about the alleged complicity of a small fraction of Vahedi's victims. Indeed, the approach adopted by counsel yielded positive results because the court accepted the government's argument that Vahedi should receive a two-level reduction for his cooperation and the court considered testimony elicited from Vahedi's father and brother asking for lenience by declining to sentence Vahedi to the 240 months requested by the victims. (*Id.* at 64-70.) Ultimately "counsel's tactical decisions . . . such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference" on habeas review and Vahedi has not overcome that deference in this case to show deficient performance. *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000).

**B. Prejudice Prong**

Even if the court were to find that Vahedi's counsel rendered deficient performance, the court would deny the Petition for lack of prejudice. Although the government recommended 97 months and the PSR suggested a guideline sentence of 121-151 months, the court elected to give an above-guidelines sentence. *See United States v. Vahedi*, 628 F. App'x 471 (9th Cir. 2015) (affirming the imposition of an above-guidelines sentence). The court gave this above-guidelines sentence based on a global assessment of the harm to Vahedi's multiple victims and Vahedi's lack of remorse. This determination was based on numerous written statements, as well as the testimony rendered at the sentencing hearing. The court noted that Vahedi "stole these people's futures." (Pet., Ex. A at 19.) The court further noted that Vahedi did not show remorse for harming his victims and stole from his father's savings. (*Id.*) Even if Vahedi were to demonstrate that a small fraction of his victims entered into fraudulent arrangements with open eyes, that is unlikely to have altered the court's determination as to Vahedi's blameworthiness, considering that he harmed many other lives. In light of the overall scale of his criminal enterprise and the consequences of his actions, Vahedi has not

shown a reasonable probability that he would have received a different outcome had his counsel elected to cross-examine two of the nine witnesses who testified and to rebut the written testimony of three others. *See Pizzuto v. Arave*, 280 F.3d 949, 978 (9th Cir. 2002), *opinion amended and superseded in part*, 385 F.3d 1247 (9th Cir. 2004) (holding that failure to prepare for a sentencing hearing is only prejudicial under *Strickland* if there is a reasonable probability that more preparation and investigation before sentencing would have affected the outcome). Thus, the court would also deny the Petition under the prejudice prong of *Strickland*.

**IV. CONCLUSION**

For the reasons stated above, the court DENIES the Motion to Vacate Sentence and DISMISSES the case. Further, the court DENIES Petitioner a certificate of appealability, as Petitioner has not made a substantial showing that he has been denied a constitutional right. *See* 28 U.S.C. § 2253(c) (providing that a certificate shall issue "only if the applicant has made a substantial showing of a denial of a constitutional right").

**IT IS SO ORDERED.**

Dated: June 12, 2017

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE